**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
ANDREW C. HAMILTON (299877)
*andrew@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (619) 343-2789

**Counsel for Plaintiff**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE ALTES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA BRANDS, INC.,<br><br>Defendant. | Case No: _____<br>Pleading Type: Class Action<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>**CAL. BUS. & PROF. CODE §§17500 *et seq.*; and**<br>**CAL. CIV. CODE §§ 1750 *et seq.***<br>NO JURY DEMAND |

# **TABLE OF CONTENTS**

I.      Jurisdiction and Venue ....................................................................... 1

II.     Nature of the Action .......................................................................... 1

III.    Parties................................................................................................ 2

IV.     Nature of Trans Fat ........................................................................... 2

      A.     There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful.......................................................................... 4

      B.     The PHO in La Choy Caused Coronary Heart Disease. ................ 6

      C.     The PHO in La Choy Caused Type-2 Diabetes. ........................... 8

      D.     The PHO in La Choy Caused Breast, Prostate, and Colorectal Cancer.......... 9

      E.     The PHO in La Choy Caused Alzheimer's Disease and Cognitive Decline................................................................................... 10

      F.     The PHO in La Choy Caused Organ Damage. ........................... 11

      G.     Artificial Trans Fat's Status as an Unlawful Non-GRAS Food Additive Was Confirmed by the FDA in 2015. ..................................... 12

V.      La Choy's "0g Trans Fat" Claim Was False, Misleading and an Unlawful Nutrient Content Claim. ........................................................ 12

VI.     La Choy Unnecessarily Contained Pho and Trans Fat.................... 13

VII.    ConAgra's Practices Are "Unfair" Within the Meaning of the California Unfair Competition Law.................................................... 14

VIII.   ConAgra's Practices Are "Unlawful" Within the Meaning of the California Unfair Competition Law.................................................... 15

      A.     Defendant's Use of PHO Is Unlawful.......................................... 15

      B.     Defendant's "0g Trans Fat" Claim Is Unlawful............................ 16

IX.     Plaintiff's Purchases of La Choy ..................................................... 19

X.      Reliance and Injury.......................................................................... 19

XI.     Delayed Discovery........................................................................... 20

XIII.   Class Action Allegations ................................................................. 21

XIV.    CAUSES OF ACTION .................................................................... 23

XV.     Prayer for Relief .............................................................................. 27

XVI.    No Jury Demand............................................................................... 28

i

Plaintiff Steve Altes, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant ConAgra Brands, Inc. ("ConAgra" or "Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.   The Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the state of which ConAgra resides.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Steve Altes suffered injuries as a result of ConAgra's acts in this District, many of the acts and transactions giving rise to this action occurred in this District and ConAgra: (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District; and (2) is subject to personal jurisdiction in this District.

## II.   <u>NATURE OF THE ACTION</u>

3.   ConAgra manufactured, marketed, and sold crispy noodle products containing partially hydrogenated oil ("PHO") under the brand name La Choy (collectively "La Choy"). Unless otherwise stated, references to La Choy only include La Choy during the period it contained PHO.

4.   PHO was and is an unlawful and dangerous food additive due to its artificial trans fat content. Artificial trans fat is a toxic substance whose unlawful use contributed to hundreds of thousands of untimely deaths in the United States, primarily from heart disease, cancer, and diabetes.

5.   On June 16, 2015, the FDA issued a final regulation and declaratory order,

after extensive public comment, declaring PHO unsafe for any use in food.[1] The FDA came to the same conclusion when it initially proposed the regulation in 2013.

6.   Defendant was aware that PHO was unsafe even before this time, yet still harmed its customers by adding PHO to La Choy.

7.   During the entire class period, inexpensive and commercially viable alternatives to PHO existed, and were used in many competitor products. In order to increase profits, ConAgra instead sold an unsafe and illegal product, and such behavior was an unfair business practice.

8.   For much of the class period, Defendant also defrauded the class by using the false and unauthorized "0g Trans Fat" nutrient content claim on La Choy packaging. All PHO, however, contains trans fat, and the amount in La Choy was not "0g," but a substantial and dangerous amount.

9.   La Choy's labeling, as used during the class period, violates specific FDA regulations, as detailed herein.

10.   Plaintiff repeatedly purchased and consumed La Choy in this District during the Class Period.

### III.   PARTIES

11.   Defendant ConAgra is a Delaware corporation with its principal place of business in Chicago, Illinois.

12.   Plaintiff Steven Altes is a citizen of California who repeatedly purchased La Choy for personal and household consumption.

### IV.   NATURE OF TRANS FAT

13.   Artificial trans fat is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400˚F in the presence of ion-donor catalyst metals such as

---

[1] 80 Fed. Reg. 34650 (June 17, 2015) (hereinafter "FDA Final Determination").

rhodium, ruthenium, and nickel.[2] The resulting product is known as partially hydrogenated oil, or PHO.

14.    PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. PHO molecules chemically differ from the natural fat molecules in other food products.[3]

15.    Natural fat, except the trace amounts of natural trans fat from ruminant animal sources like beef, milk, and mutton, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds. Trans fat, in contrast to cis fat, has carbon double bonds with hydrogen atoms on opposite sides of the carbon chain.



16.    PHO was initially a "wonder product" attractive to the processed food industry because it combined the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat. Like processed cis fat, PHO is manufactured from low-cost seed oil and legumes,[4] while saturated fat is derived from relatively expensive animal and tropical plant sources.[5]

17.    As detailed herein, PHO causes cardiovascular disease, diabetes, cancer, and

---

[2] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 CIRCULATION 2588, 2588-90 (1997).

[3] *See* Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999). *See also* Walter Willett, *The Scientific Case for Banning Trans Fats* (Dec. 13, 2013), SCIENTIFIC AMERICAN, *available at* www.scientificamerican.com/article/the-scientific-case-for-banning-trans-fats/ (last visited April 8, 2019).

[4] e.g., corn oil, cottonseed oil, soybean oil, peanut oil

[5] e.g., butter, cream, tallow, palm oil, coconut oil

Alzheimer's disease, and accelerates memory damage and cognitive decline. These risks were well known during the entire class period, and at no point during the class period was there ever a consensus that PHO was safe to use, neither in general nor as an ingredient in crispy noodle products.

### A. There is a Well-Established Scientific Consensus That Trans Fat is Extremely Harmful.

18.     The National Academies of Science were charted by an act of Congress, signed by President Lincoln in 1863. Under that charter, in 1970, the National Academy of Medicine was created. In 2005, under its former name of the Institute of Medicine ("IOM"), it issued a report finding there was "no safe level" of PHO or artificial trans fat intake.[6] Therefore, in 2005, there was no consensus that PHO was a safe ingredient to use in food. To the contrary, the consensus was that it is unsafe.

19.     In addition, "trans fatty acids are not essential and provide no known benefit to human health."[7] Thus, while IOM provided safe maximum levels for other food elements like saturated fat, in could not and declined to provide one for trans fat when requested by the FDA, the reason being that "any incremental increase in trans fatty acid intake increases the risk of CHD." *Id.*

20.     In 2006, Dariush Mozaffarian of Harvard Medical School wrote in the New England Journal of Medicine, "the consumption of trans fatty acids results in considerable potential harm but no apparent benefit."[8]

21.     Julie Louise Gerberding, who served eight years as the head of the United States Centers for Disease Control and Prevention, wrote in 2009:

---

[6] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (2005).

[7] Food Labeling; Health Claim; Phytosterols and Risk of Coronary Heart Disease; Proposed Rule, 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010).

[8] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601, 1608-1609 (2006).

The scientific rationale for eliminating exposure to artificial trans fatty acids in foods is rock solid. There is no evidence that they provide any health benefit, and they are certainly harmful. These compounds adversely affect both low- and high-density lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at relatively low levels of dietary intake. Gram for gram, trans fats are far more potent than saturated fats in increasing the risk for heart disease, perhaps because they also have pro-inflammatory properties and other adverse effects on vascular endothelium. The strong evidence of harm. . . Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[9]

22.    Dr. Mozaffarian further writes:

Given the adverse effects of trans fatty acids on serum lipid levels, systemic inflammation, and possibly other risk factors for cardiovascular disease and the positive associations with the risk of CHD, sudden death from cardiac causes, and possibly diabetes, the potential for harm is clear. The evidence and the magnitude of adverse health effects of trans fatty acids are in fact far stronger on average than those of food contaminants or pesticide residues, which have in some cases received considerable attention.[10]

23.    In 2011, Walter Willet, also a professor at Harvard Medical School, described ConAgra's practice of selling food made with PHO as "a food safety issue . . . this is actually contamination."[11]

24.    The views of these experts, and many others, show that, even before the FDA formally declared PHO to be unsafe for use in food in 2015, its use was still unlawful because there was not a consensus of scientific experts that PHO was a safe food additive.

---

[9] Julie Louise Gerberding, Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake, 151 ANN. INTERN. MED. 137-138 (2009).

[10] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. ENGL. J. MED. 1601 (2006).

[11] Rebecca Coombes, *Trans fats: chasing a global ban*, 343 BRITISH MED. J. (2011).

**B.**     **The PHO in La Choy Caused Coronary Heart Disease.**

25.     Trans fat raises the risk of CHD more than any other known consumed substance.[12]

26.     A 1999 estimate published in the New England Journal of Medicine found that removing PHO from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,000 premature deaths annually."[13]

27.     By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including coronary artery disease and primary cardiac arrest.

28.     In a joint Dietary Guidelines Advisory Committee Report, the Department of Health and Human Services and the U.S. Department of Agriculture recognized "[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[14]

29.     The American Heart Association warns, "trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."[15]

30.     Even further back, in 2003, a review of literature on the connection between the consumption of artificial trans fat and coronary heart disease, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of
> study designs (i.e., intervention trials and prospective cohort studies) that were

---

[12] Mozaffarian, 354 NEW ENG. J. MED. at 1603.

[13] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 NEW ENG. J. MED. 94, 94-8 (1999).

[14] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[15] Am. Heart Ass'n., *Trans Fat Overview*, *available at* tinyurl.com/TransFatOverview (last visited April 12, 2019).

conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[16]

31.    The FDA concluded in 2010 that "there have been no reports issued by authoritative sources that provide a level of trans fat in the diet . . . below which there is no risk of [Coronary Heart Disease]." 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010). Rather, there "is a positive linear trend between trans fatty acid intake and LDL cholesterol concentration, and therefore there is a positive relationship between trans fatty acid intake and the risk of CHD." *Id.*

32.    A study published in American Heart Association's *Circulation* found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after controlling for a variety of medical and lifestyle risk factors.[17]

33.    Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue (stored body fat) compared to controls. The effects of consuming trans fat are therefore shown to be long-lived because of its storage within the body in place of natural fats.[18]

34.    Cholesterol dysregulation and systemic inflammation/immune system dysregulation are the most important pathways through which PHO consumption causes morbidity and death. Another route is by promoting atherosclerosis by degrading the function of TGF-β, a protein responsible for preventing the development of atherosclerotic

---

[16] FDA, Final Rule, 68 Fed. Reg. 41433, 41445 (July 11, 2003).

[17] Rozenn N. Lemaitre et al., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 CIRCULATION 697, 697-701 (2002).

[18] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. NUTR. 874, 874-79 (2004).

lesions.[19]

35.    TGF-β also functions to suppress cancerous tumors. Degradation of TGF-β function is also likely one route by which artificial trans fat consumption promotes cancers in fatty organs and the digestive system. *Id.*

**C.    The PHO in La Choy Caused Type-2 Diabetes.**

36.    Artificial trans fat also causes type-2 diabetes.[20]

37.    In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself into cell membranes, causing the insulin receptors on cell walls to misform and malfunction, and in turn elevating blood glucose levels and stimulating further release of insulin.

38.    Researchers at Northwestern University's medical school found that mice show multiple markers of type-2 diabetes after eating PHO for only four weeks.[21]

39.    By the eighth week of the study, mice fed the high trans fat diet showed a 500% increase compared to the control group in hepatic interleukin-1β gene expression, one such marker of diabetes, indicating the extreme stress even short-term exposure to artificial trans fat places on the body. *Id.*

40.    A 14-year study of 84,204 women found that for every 2 percent increase in energy intake from artificial trans fat, the relative risk of type-2 diabetes was increased by

---

[19] Chen, C.L. et al., *A mechanism by which dietary trans fats cause atherosclerosis*, J. NUTR. BIOCHEMISTRY 22(7) 649-655 (2011).

[20] Am. Heart Ass'n., *Trans Fat Overview*, *available at* tinyurl.com/TransFatOverview (last visited April 12, 2019).

[21] Sean W. P. Koppe et al., *Trans fat feeding results in higher serum alanine aminotransferase and increased insulin resistance compared with a standard murine high-fat diet*, 297 AM. J. PHYSIOL. GASTROINTEST LIVER PHYSIOL. 378 (2009).

39 percent.[22]

**D.**   **The PHO in La Choy Caused Breast, Prostate, and Colorectal Cancer.**

41.   Trans fat is a carcinogen which causes breast, prostate, and colorectal cancer.

42.   A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in the lowest.[23]

43.   In a 25-year study of 14,916 American physicians, those in the highest quintile of trans fat consumption had more than double the risk of developing prostate cancer than the doctors in the lowest quintile.[24]

44.   A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[25]

45.   A 600-person study found an 86 percent greater risk of colorectal cancer in the highest trans fat consumption quartile.[26]

---

[22] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 AM. J. CLINICAL NUTRITION 1019, 1023 (2001).

[23] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 AM. J. EPIDEMIOLOGY 1312, 1316 (2008).

[24] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer*, 47 PROC. AM. ASSOC. CANCER RESEARCH 95, 99 (2006).

[25] Xin Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 CARCINOGENESIS 1232, 1232 (2007).

[26] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 AM. J. EPIDEMIOLOGY 289, 294 (2008).

46.     A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[27]

**E.     The PHO in La Choy Caused Alzheimer's Disease and Cognitive Decline.**

47.     Trans fat causes Alzheimer's disease and cognitive decline.

48.     In a study examining 815 Chicago area seniors, researchers found "increased risk of incident Alzheimer disease among persons with high intakes of . . . trans-unsaturated fats."[28]

49.     The study "observed a strong increased risk of Alzheimer disease with consumption of trans-unsaturated fat." *Id.*

50.     In a study of 1,486 women with type-2 diabetes, researchers found "[h]igher intakes of . . . trans fat since midlife . . . were [] highly associated with worse cognitive decline . . . ."[29]

51.     The study cautioned "[d]ietary fat intake can alter glucose and lipid metabolism and is related to cardiovascular disease risk in individuals with type 2 diabetes. Because insulin, cholesterol, and vascular disease all appear to play important roles in brain aging and cognitive impairments, dietary fat modification may be a particularly effective strategy for preventing cognitive decline, especially in individuals with diabetes." *Id.* (citations omitted).

52.     Artificial trans fat also damages the brains of those who consume it. A study conducted by UCSD School of Medicine of 1,018 men, mostly younger men, found trans

---

[27] Evropi Theodoratou et al., *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 AM. J. EPIDEMIOLOGY 181 (2007).

[28] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 ARCH. NEUROL. 194, 198-99 (2003).

[29] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 DIABETES CARE 635 (2009).

fat consumption to be strongly correlated with impaired memory.[30] The authors of the study, appearing in *Circulation*, the American Heart Association's peer-reviewed journal, conclude that "Greater dTFA [dietary trans fatty acid] was significantly associated with worse word memory in adults aged 20-45 years, often critical years for career building."

53.     Performing a word memory test, each additional gram per day of trans fat consumed was associated with 0.76 fewer words correctly recalled. The authors suggest trans fat's well-established pro-oxidant effect and its damage to cell energy processes is the pathway by which trans fat consumption damages memory ability. The young men with the highest trans fat consumption scored 12 fewer recalled words on the 104-word test. *Id.*

### F.     The PHO in La Choy Caused Organ Damage.

54.     Artificial trans fat molecules are readily incorporated into blood and organ cells in place of natural fat molecules, which damages vital organs, including the heart, brain, and reproductive system. Further, changing the chemical composition of cells induces systemic inflammation, where the immune system fails to recognize such cells as native to the body and becomes persistently overactive, leading to further organ damage.[31]

---

[30] Golomb, B. et al., *Trans Fat Consumption is Adversely Linked to Memory in Working-Age Adults*, CIRCULATION. 130:A15572 (2014).

[31] *See*:

Lopez-Garcia et al., *Consumption of Trans Fat is Related to Plasma Markers of Inflammation and Endothelial Dysfunction*, 135 J. NUTR. 562-66 (2005);

Baer et al., *Dietary fatty acids affect plasma markers of inflammation in healthy men fed controlled diets; a randomized crossover study*, 79 AM. J. CLIN. NUTR. 969-73 (2004);

Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats and oils*, 63 EURO. J. CLIN. NUTR. S22-33 (2009);

Mozaffarian et al., *Trans Fatty acids and systemic inflammation in heart failure*. 80 AM. J. CLIN. NUTR. 1521-25 (2004).

**G.      Artificial Trans Fat's Status as an Unlawful Non-GRAS Food Additive Was Confirmed by the FDA in 2015.**

55.     On June 17, 2015, the FDA released a declaratory order which it called its Final Determination Regarding Partially Hydrogenated Oils, finding that "PHOs are not GRAS for any use in human food." 80 Fed. Reg. 34650, 34651 (June 17, 2015) ("Final Determination").

56.     The FDA's Final Determination noted that "if there are data and information that demonstrates to a reasonable certainty that no harm will result from a specific use of a PHO in food, that information could be submitted as part of a food additive petition to FDA seeking issuance of a regulation to prescribe conditions under which the additive may be safely used in food." Final Determination at 34664.

57.     On June 11, 2015 and March 7, 2017, the Grocery Manufacturers Association submitted such a food additive petition and then an amended petition seeking approval to use partially hydrogenated oil in "approximately 60 food categories". On May 21, 2018, the FDA denied the amended petition, and stated it considered the first one abandoned. In doing so, the FDA rejected the argument for a "non-linear dose response" model and noted that "the vast majority of scientific studies have been consistent in their conclusions that trans fat consumption has a progressive and linear adverse effect on blood lipids and CHD risk." Denial of Food Additive Petition, 83 Fed. Reg. 23382, 23390 (May 21, 2018).

**V.      LA CHOY'S "0G TRANS FAT" CLAIM WAS FALSE, MISLEADING AND AN UNLAWFUL NUTRIENT CONTENT CLAIM.**

58.     During the Class Period, La Choy was made with PHO yet contained the deceptive and unlawful nutrient content claim "0g Trans Fat Per Serving" prominently displayed on the front of the package.






59.    This language was part of an intentional, long-term campaign to deceptively market La Choy as healthful and free of trans fat.

60.    ConAgra's conduct is especially egregious as many of the competitor products are and were free of PHO and do not pose the serious health consequences associated with La Choy.

61.    "0g Trans Fat" is an unauthorized nutrient content claim.

## VI.    LA CHOY UNNECESSARILY CONTAINED PHO AND TRANS FAT.

62.    ConAgra's use of PHO in La Choy was always unnecessary. There are several safe substitutes for PHO and artificial trans fat. Indeed, ConAgra now uses non-hydrogenated "palm oil," which does not contain trans fat, as a substitute for PHO in the

13

current formulation.

63.     La Choy was made with PHO even as competing crispy noodle products did not engage in this unfair and unlawful conduct. During the class period, brands of crispy noodle products without PHO included Pakesz and Pennsylvania Dutch.

## VII.   <u>CONAGRA'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.</u>

64.     Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because its conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of this conduct to Defendant does not outweigh the gravity of the harm to Defendant's victims.

65.     Plaintiff's claims for unfair business practices are independent of his claim for false advertising. Even absent the unlawful and deceptive "0g Trans Fat claim," the sale of La Choy violated the UCL and the implied warranty of merchantability.

66.     In particular, while the unlawful sale of La Choy may have had some utility to Defendant in the form of increased profits, this utility was small and far outweighed by the gravity of the serious health harm ConAgra inflicted on consumers.

67.     Defendant's conduct injured competing manufacturers and sellers of crispy noodle products that do not engage in its unfair behavior, especially given ConAgra's large market share, large market power, and limited retail shelf space.

68.     Moreover, Defendant's practices violated public policy as declared by specific constitutional, statutory, or regulatory provisions, such as California Education Code § 49431.7.

69.     Defendant's actions also violated public policy by causing the United States and California to pay—via Medicare, Medicaid, Affordable Care Act Exchange subsidies, veterans' health programs, public employee and retiree health insurance—for treatment of trans fat-caused illnesses.

70.     Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not an injury consumers

14

themselves could reasonably have avoided.

71. The unfairness of Defendant ConAgra's conduct is also illustrated by, *inter alia*:

- Many of ConAgra's competitors made their crispy noodle products without adding trans fat;

- Many other smaller brands, even cheaper store brands, are also made without adding trans fat;

- Peer-reviewed studies published in scholarly public health journals have repeatedly found that the removal of trans fat does not affect the price or availability of any food;

- The State of California has made legislative findings that artificial trans fat is a dangerous hazard to public health;

- The FDA has found the partially hydrogenated oil used in La Choy to not be Generally Recognized as Safe;

- Doctors' associations such as the American Heart Association, and learned societies such as the National Academies of Science, found that the addition of trans fat to the American diet by causing tens of thousands of excess deaths per year, and worked to publicize these findings. ConAgra was well aware of these dangers, but choose not to follow its food industry peers in immediately removing trans fat from its products.

## VIII. CONAGRA'S PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW.

### A. Defendant's Use of PHO Is Unlawful.

72. ConAgra's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because PHO was never Generally Recognized as Safe ("GRAS") during the Class Period. Therefore, ConAgra's use of PHO renders its products adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C).

73. The PHO used in La Choy appears nowhere on the FDA's list of the hundreds

of substances it considers GRAS, nor has it ever.[32]

74.    PHO also fails to meet the fundamental requirement for GRAS status—that the substance is safe. In fact, the FDA determined that there is no safe level of artificial trans fat consumption.

75.    Under the Food Additives Amendment of 1958, which amended the FDCA, all food additives are unsafe unless they (1) qualify for and are the subject of a GRAS self-determination, or (2) their use is pursuant to FDA approval. Because the PHO used in La Choy does not meet either of these exceptions, it is, and long has been, unsafe and unlawful for use in food.

76.    ConAgra's use of PHO in La Choy thus constitutes adulteration under 21 U.S.C. § 342 and Cal. Health & Safety Code § 110545.

77.    On November 8, 2013, the FDA made its initial tentative determination that PHO is unsafe, and therefore is not GRAS.[33]

78.    On June 17, 2015, after extensive public comment, the FDA determined trans fat is not GRAS.[34]

79.    At no point during the class period was there a scientific consensus PHO was safe. Indeed, for more than two decades, the scientific consensus has been that it is unsafe.

**B.    Defendant's "0g Trans Fat" Claim Is Unlawful.**

80.    ConAgra's "0g Trans Fat" claim also constitutes a violation of 21 C.F.R. § 101.62, which does not provide authorization for such claims relating to a product's trans fat content outside of the nutrition panel.

81.    The "0g Trans Fat" claim also violates the Federal Food, Drug and Cosmetic Act ("FDCA"), specifically, (a) 21 U.S.C. § 343(a), which deems food misbranded when the label contains a statement that is "false or misleading in any particular," and (b) 21

---

[32] *See* 21 C.F.R. §§ 181, 182, 184 and 186.

[33] 78 Fed. Reg. 67169 (November 8, 2013).

[34] 80 Fed. Reg. 34650 (June 17, 2015).

CLASS ACTION COMPLAINT

C.F.R. § 101.13(i)(3), which bars nutrient content claims voluntarily placed on the front of a product label that are "false or misleading in any respect."

82.    The challenged claim FDCA's implementing regulation, 21 C.F.R. § 1.21, because La Choy's packaging fails to reveal material facts, namely the dangers of PHO described in detail herein, "in light of other representations."

83.    The "0g Trans Fat" claim also violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Health & Safety Code § 110660, which deems food products "misbranded" if their labeling is "false or misleading in any particular," and Health & Safety Code § 110670, which bars nutrient content claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content claims (i.e., "may not be false or misleading in any respect")

84.    Further, ConAgra's "0g Trans Fat" claim also violates the following sections of California's Sherman Law governing food safety and marketing:

- Health & Safety Code § 110395, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.";

- § 110398, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- § 110400, "It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .";

- § 110680, "Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).";

- § 110760, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.";

- § 110765, "It is unlawful for any person to misbrand any food."; and

- § 110770, "It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food."

85.    For the "crispy rice" flavor of La Choy only, the 0g Trans Fat claim is unlawful for all of the previously stated reasons, as well as one additional reason. The sodium content

17

of the rice noodles is more than 480mg per 50g of product, and therefore all nutrient content claims require a disclosure statement that refers the reader to the sodium content stated in the nutrition label.

86.     ConAgra recognizes the rice noodles require this disclosure, and provided the correct text of the disclosure on its package. However, the size and typeface of the text does not confirm with *any* of FDA's rules for such disclosure, which are provided in 21 C.F.R. § 101.13(h)(4).



87.     First, the disclosure is not at least 1/16 of an inch in size.

88.     Second, the disclosure is not in "boldface print or type."

89.     Third, the disclosure's combination of the small size, light typeface, and white-on-blue fails the general requirement it be "easily legible."

90.     Fourth, the disclosure is less than half the size of the nutrient content claim itself.

## IX.   <u>PLAINTIFF'S PURCHASES OF LA CHOY</u>

91.    La Choy was placed into interstate commerce by ConAgra and sold throughout the country and California with ConAgra's knowledge that it contained an unlawful, unfair, and deceptive nutrient content claim, and an unlawful and unfair ingredient.

92.    Plaintiff Steve Altes purchased La Choy about four times during the Class Period. His most recent purchase was in 2016 at the Ralph's located at 27760 N. McBean Parkway, Valencia, CA 91354.

## X.   <u>RELIANCE AND INJURY</u>

93.    When purchasing La Choy, Plaintiff was seeking a product made with safe and lawful ingredients.

94.    Plaintiff relied on ConAgra's "0g Trans Fat" claim as a substantial factor in some of his purchases of La Choy. Plaintiff would not have purchased La Choy absent ConAgra's unfair, deceptive, and unlawful conduct.

95.    Plaintiff, on at least one occasion, would not have purchased La Choy absent Defendant's "0g Trans Fat" misrepresentation, and never would have purchased it had he known it was unlawful and dangerous.

96.    Plaintiff purchased La Choy believing it had the qualities he sought based on the product's deceptive labeling and the natural assumption that food sold in stores by large companies would not have unsafe and unlawful ingredients.

97.    Reasonable consumers in California, including Plaintiff, expect food sold in grocery stores to be fit for human consumption, not unlawful foods with dangerous, non-GRAS ingredients.

98.    During the class period, La Choy contained an unsafe amount of artificial trans fat. La Choy was not fit for human consumption and had a value of $0.

99.    La Choy costs more than similar products without false and misleading labeling, and would have cost less and demanded less in the marketplace, absent ConAgra's false and misleading statements and material omissions.

100.    Plaintiff suffered physical injury when he repeatedly consumed La Choy,

19

because consuming artificial trans fat in *any* quantity, including the quantity he actually consumed, inflames and damages the cardiovascular system and increases the risk of heart disease, diabetes, cancer, and death.

101.   Plaintiff lost money and suffered injury in fact as a result of Defendant's unfair, deceptive, and unlawful behavior. Plaintiff altered his position to his detriment and suffered loss in an amount equal to the amount he paid for La Choy.

102.   Plaintiff lost money as a result of ConAgra's conduct because he purchased products that were detrimental to his health and were unfairly offered for sale in violation of federal and California law.

103.   Plaintiff was further injured by ConAgra's omission of information that would have been important to his purchasing decisions. Instead, they were unsatisfactory to Plaintiff for the reasons described herein.

## XI.   <u>DELAYED DISCOVERY</u>

104.   Mr. Altes had no knowledge that the "0g Trans Fat" claim on the front of the La Choy package was false and illegal, nor did he have reason to suspect such an explicit fraud on the label of a product sold at nearly every grocery store.

105.   Plaintiff first discovered ConAgra's unlawful acts in February 2019, when he learned that La Choy contained an unsafe food additive that La Choy's "0g Trans Fat" claim was both false and an unlawful and unauthorized nutrient content claim.

106.   Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier ConAgra's unlawful acts described herein because the illegality and full dangers of artificial trans fats were known to Defendant, but not to him, throughout the Class Period defined herein. Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized human nutrition knowledge of ConAgra. Even today the nature and extensive utilization of artificial trans fats—including that they necessarily exist where partially hydrogenated oil is used an ingredient in a food product—is generally unknown to the average consumer.

107.   Plaintiff is a reasonably diligent consumer who exercised reasonable diligence

20

in his purchase, use, and consumption of La Choy. Nevertheless, he would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that he is not an expert on nutrition and does not typically read or have ready access to scholarly journals such as The Journal of Nutrition, The European Journal of Clinical Nutrition, and The New England Journal of Medicine, where the scientific evidence of artificial trans fat's dangers has been published.

108.   ConAgra's labeling practices—in particular, falsely representing for many years that La Choy has "0g Trans Fat"—actively impeded Plaintiff's and Class members' abilities to discover the claims in this complaint.

109.   Plaintiff also reasonably relied on the reasonable assumption that a large food company would not make unauthorized and unlawful claims on its products.

110.   It is not reasonable or efficient to expect all Californians who purchase food to familiarize themselves with the details of which food additives contain which nutrients, and which nutrient content claims are authorized, and which ones are false. Rather, the burden is reasonably placed on the company that manufactures packaged foods, and then decides to promote them with nutrient content claims. Packaged food manufacturers, rather than their many and decentralized consumers, are in the best and least costly position to discover their violations, and to bear the loss for such violations. *See generally* Calabresi, G., Toward a Test for Strict Liability in Torts, 81 Yale L.J. 1055 (1973) (fairness and economic efficiency favor not placing burdens on individual consumers when they can be centralized on product manufacturers).

111.   The time of Plaintiff's discovery of his claims was therefore not the result of negligence or unreasonable ignorance, but in all respects both reasonable and typical of California food purchasers.

## XIII.  CLASS ACTION ALLEGATIONS

112.   Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers and their families.

113.  The **<u>Class</u>** is defined as follows:

All citizens of California who purchased in California, between January 1, 2010 and May 31, 2018, La Choy products containing partially hydrogenated oil.

114.   Questions of law and fact common to Plaintiff and the Class include:

- Whether Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

- Whether the slight utility Defendant realizes as a result of its conduct outweighs the gravity of the harm the conduct causes to its victims;

- Whether Defendant's conduct violates public policy as declared by specific constitutional, statutory, or regulatory provisions;

- Whether the injury to consumers from Defendant's practices is substantial;

- Whether ConAgra communicated a misleading health and wellness message and made an unauthorized nutrient content claim through its "0g Trans Fat" claim;

- Whether members of the Class are entitled to restitution, rescission, and attorney fees and costs;

- Whether members of the Class are entitled to prejudgment interest, and how that interest is to be calculated; and

- Whether members of the Class are entitled to any further relief.

115.  Plaintiff's claims are typical of Class members' claims because all Class members were subjected to the same unlawful, unfair, and deceptive conduct when they purchased La Choy and suffered the same economic injury.

116.   The Class is sufficiently numerous, as it includes thousands of individuals who purchased La Choy throughout California during the Class Period.

117.   Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small, as little as two dollars for some Class members. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

118.   Questions of law and fact common to the Class predominate over any questions

22

affecting only individual members.

## XIV.  <u>CAUSES OF ACTION</u>

### <u>First Cause of Action</u>

### Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*

119.   In this and every cause of action, Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in the Complaint, as if fully set forth herein.

**Unfair Conduct**

120.   The business practices and omissions of Defendant as alleged herein constitute "unfair" business acts and practices in that Defendant's conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to Defendant's victims.

121.   Further, Defendant's practices are unfair because they violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including those embodied in the FDCA, California Health and Safety Code, and California Education Code.

122.   Further, Defendant's practices are unfair because the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided or should be obligated to avoid.

**Unlawful Conduct**

123.   ConAgra's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because PHO was never Generally Recognized as Safe ("GRAS") during the Class Period. Therefore, ConAgra's use of PHO renders its products adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C).

124.   ConAgra's conduct is "unlawful" because the use of PHO in food violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), specifically, the Food Additives Amendment of 1958, which deems a food additive unlawful unless it has been determined to be GRAS. 21 U.S.C. §§ 348, 342.

125.   The PHO used in La Choy appears nowhere on the FDA's list of the hundreds of substances it considers GRAS, nor has it ever.[35]

126.   PHO also fails to meet the fundamental requirement for GRAS status—that the substance is safe. In fact, the FDA determined that there is no safe level of artificial trans fat consumption.

127.   Under the Food Additives Amendment of 1958, which amended the FDCA, all food additives are unsafe unless they (1) qualify for and are the subject of a GRAS self-determination, or (2) their use is pursuant to FDA approval. Because the PHO used in La Choy does not meet either of these exceptions, it is, and long has been, unsafe and unlawful for use in food.

128.   ConAgra's use of PHO in La Choy thus constitutes adulteration under 21 U.S.C. § 342 and Cal. Health & Safety Code § 110545.

129.   On November 8, 2013, the FDA made its initial tentative determination that PHO is unsafe, and therefore is not GRAS.[36]

130.   On June 17, 2015, after extensive public comment, the FDA determined trans fat is not GRAS.[37]

131.   At no point during the class period was there a scientific consensus PHO was safe. Indeed, for more than two decades, the scientific consensus has been that it is unsafe.

132.   ConAgra has made and distributed, in interstate commerce and in Los Angeles County, products that contain unlawful food additives. La Choy was placed into interstate commerce by Defendant.

133.   Defendant's conduct further violates the following sections of California's Sherman Law governing food safety and marketing:

- Health & Safety Code § 110395, "It is unlawful for any person to manufacture, sell,

---

[35] *See* 21 C.F.R. §§ 181, 182, 184 and 186.

[36] 78 Fed. Reg. 67169 (November 8, 2013).

[37] 80 Fed. Reg. 34650 (June 17, 2015).

deliver, hold, or offer for sale any food . . . that is falsely advertised.";

- § 110398, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- § 110400, "It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .";

- § 110670, "Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.";

- § 110680, "Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).";

- § 110760, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.";

- § 110765, "It is unlawful for any person to misbrand any food."; and

- § 110770, "It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food."

134.   The use of artificial trans fat in La Choy thus constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful prong" of the UCL.

135.   Defendant's conduct is further "unlawful" because it violates the Federal Food, Drug and Cosmetic Act ("FDCA"), specifically, (a) 21 U.S.C. § 343(a), which deems food misbranded when the label contains a statement that is "false or misleading in any particular," and (b) 21 C.F.R. § 101.13(i)(3), which bars nutrient content claims voluntarily placed on the front of a product label that are "false or misleading in any respect."

136.   ConAgra further violates the FDCA's implementing regulation, 21 C.F.R. § 1.21, because La Choy's packaging fails to reveal material facts, namely the dangers of PHO described in detail herein, "in light of other representations," namely the misleading "0g Trans Fat" front label claim.

137.   Defendant's conduct further violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Health & Safety Code § 110660, which deems food

25

products "misbranded" if their labeling is "false or misleading in any particular," and Health & Safety Code § 110670, which bars nutrient content claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content claims (i.e., "may not be false or misleading in any respect"). Defendant's conduct also violates the other sections of the Sherman Law, listed *supra*.

138.  The challenged labeling statement made by ConAgra thus constitutes violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

139.  Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

140.  Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain when he decided to purchase La Choy.

141.  Had Plaintiff been aware of Defendant's unlawful tactics, he would not have purchased La Choy.

142.  Defendant's unlawful acts allowed them to sell more units of La Choy than they would have otherwise, and at a higher price, and higher margin.

**Fraudulent Conduct**

143.  Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

144.  The acts of Defendant as alleged herein constitute "fraudulent" business acts and practices in that Defendant's conduct has a likelihood, capacity or tendency to deceive Plaintiff, the Class, and the general public.

145.  Defendant's actions were the proximate cause of Plaintiff's injuries.

146.  Plaintiff seeks an order for the disgorgement and restitution of all revenue received by Defendant from the sale of La Choy in the amount of $5 million or such higher amount to be determined at trial, as well as injunctive relief, attorney fees, and costs.

**<u>Second Cause of Action</u>**

26

**California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.***

147.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

148.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

149.   Defendant's policies, acts and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

- § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

- § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

150.   Defendant's actions were the proximate cause of Plaintiff's injuries.

151.   Plaintiff seeks an order for the disgorgement and restitution of all revenue received by Defendant from the sale of La Choy in the amount of $5 million or such higher amount to be determined at trial, as well as injunctive relief, attorney fees, and costs.

## XV.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.   An order confirming that this class action is properly maintainable as a class action as defined above, appointing Plaintiff and his undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.   An order requiring Defendant to pay restitution to Plaintiff and class members

so that they may be restored the money which Defendant acquired by means of any unfair, deceptive, unconscionable, fraudulent, and negligent acts;

C.    An award of pre-judgment and post-judgment interest;

D.    An award of attorney fees and costs; and

E.    Such other and further relief as this Court may deem just, equitable, or proper.

## XVI.  <u>NO JURY DEMAND</u>

Plaintiff does not demand a trial by jury.

DATED: May 6, 2019                         Respectfully Submitted,

/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
ANDREW C. HAMILTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    ((619) 343-2789

**<u>Counsel for Plaintiff</u>**

28

CLASS ACTION COMPLAINT